**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Criminal No. 16-cr-47 (TSC) |
| BIANCA BUSH-BRONSON, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Defendant Bianca Bush-Bronson has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 36 ("Def.'s Mot. to Vacate").) Having considered the pleadings, the oral arguments of counsel, and for the reasons stated herein, the court will DENY Bush-Bronson's Motion to Vacate.

## I. BACKGROUND

On April 22, 2016, Bush-Bronson pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. (ECF No. 6 ("Plea Agreement Letter") at 1.) In signing the plea agreement, and in open court at her plea hearing, Bush-Bronson acknowledged that a violation of 18 U.S.C. § 1343 carries a statutory maximum sentence of 20 years of imprisonment and an estimated sentencing guidelines range of 30 to 37 months of imprisonment.[1] (*Id.* at 1, 3.) Bush-Bronson further acknowledged that the "sentence to be imposed is a matter solely within the discretion of the Court." (*Id.* at 5.)

On January 9, 2017, counsel for Bush-Bronson filed a Memorandum in Aid of Sentencing, arguing that the court should depart from the sentencing guidelines range and sentence her to a period of

[1] The court calculated a sentencing guidelines range of 33 to 41 months of imprisonment. (*See* ECF No. 28 ("Statement of Reasons") at 1.)

home confinement. (ECF No. 20 ("Def.'s Sentencing Mem.") at 1.) Bush-Bronson further argued that a downward departure from the estimated sentencing guidelines range was warranted pursuant to U.S.S.G. § 5H1.6 because of her extraordinary family responsibilities. (*Id.* at 3–8.) The court denied Bush-Bronson's request for departure and imposed a sentence of 36 months of imprisonment and 36 months of supervised release. (*See* ECF No. 27 ("Judgment") at 2–3.)

Almost one year later, on January 19, 2018, Bush-Bronson filed a *pro se* motion to vacate her sentence under 28 U.S.C. § 2255, claiming, as she had at her sentencing, that a departure was warranted under U.S.S.G. § 5H1.6 due to her "Extraordinary Family Responsibilities." (Def.'s Mot. to Vacate at 4.) Bush-Bronson argued that a departure from the guidelines range was warranted because she is the "[s]ingle parent of [a] severely mentally disabled son"; she is the sole provider of her son's financial, physical, and mental wellbeing; she is divorced; and her disabled son is currently under the care of her mother, who is also disabled. (*Id.*) She also claimed that her counsel "refused to file an appeal" to ask the court for a split sentence. (*Id.*)

On April 16, 2018, Bush-Bronson filed an amendment to her § 2255 motion, expanding on her challenge to her counsel's performance. (ECF No. 37 ("Amendment") at 1.) She also asserted four additional grounds, "Ground Two" through "Ground Five," for vacation of her sentence: (1) her base offense level was incorrectly calculated, (2) her criminal history score was incorrectly calculated, (3) the ordered restitution amount was incorrectly calculated, and (4) she is entitled to money from her former employer. (*Id.* at 1–2.) In the amendment, Bush-Bronson requested that the court reduce her sentence by six to nine months or permit her to serve the rest of her sentence under home confinement. (*Id.* at 2.) She also asked the court to correct the restitution amount and order her former employer to pay the money she is owed. (*Id.*)

On April 27, 2018, the court ordered the government to file a response to Bush-Bronson's § 2255 motion by May 30, 2018. (Minute Order, dated Apr. 27, 2018.) The government complied with the court's order. (*See* ECF No. 47 ("Govt.'s Opp.").) On June 6, 2018, Mary Elizabeth Davis noticed her appearance on behalf of Bush-Bronson. (ECF No. 48.) Almost a month later, the court ordered the parties to "file responses, if any, to pending motions on the docket by July 17, 2018." (Minute Order, dated July 5, 2018.) Bush-Bronson's new counsel elected not to file a reply to address the arguments raised in the government's opposition to Bush-Bronson's § 2255 motion.

On December 11, 2018, the court held a hearing on Bush-Bronson's § 2255 motion. At that hearing, defense counsel conceded that most of the claims raised by Bush-Bronson in her motion and amendment were filed out of time. (ECF No. 60 ("Mhrg. Tr.") at 4:14–5:12.) And in a supplemental brief, defense counsel stated that "[t]here is a single remaining issue for this Court to decide, that is, was counsel ineffective for failing to file a notice of appeal when asked to do so." (ECF No. 61 ("Def.'s Supp. Br.") at 8.)

## II. LEGAL STANDARD

To obtain relief under 28 U.S.C. § 2255, a defendant must show that her "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A defendant bears the burden of proving her claims by a preponderance of the evidence, *United States v. Bell*, 65 F. Supp. 3d 229, 231 (D.D.C. 2014), and "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Burwell*, 160 F. Supp. 3d 301, 308 (D.D.C. 2016) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). If the court finds "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and

shall discharge the prisoner or resentence [her] or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When confronted with motions to vacate, courts are to conduct a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Here, out of an abundance of caution, the court held an evidentiary hearing to determine whether Bush-Bronson is entitled to relief.

## III. DISCUSSION[2]

Bush-Bronson argues that she should be permitted to file a direct appeal for ineffective assistance of counsel because her former counsel, Elita Amato, did not file a notice of appeal when asked to do so, and incorrectly advised Bush-Bronson that she would be in breach of her plea agreement if she appealed. (Def.'s Mot. to Vacate at 5; Amendment at 1; Def.'s Supp. Br. at 4–11.)

To demonstrate ineffective assistance of counsel, a defendant must show (1) that her counsel's performance was deficient, and (2) that the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, district courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong "requires the defendant to demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).

[2] Because Bush-Bronson conceded every claim except the ineffective assistance of counsel claim predicated upon the alleged failure to file a notice of appeal, the court's analysis will be confined to that claim.

**A. Failure to File a Notice of Appeal**

*1. Flores-Ortega*

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court examined "the proper framework for evaluating an ineffective assistance of counsel claim, based on counsel's failure to file a notice of appeal without respondent's consent." *Id.* at 473. In that case, based on a conversation that took place after the pronouncement of sentence, Flores-Ortega believed that his counsel was going to file an appeal on his behalf. *Id.* at 475. He then underwent an evaluation that precluded him from communicating with his counsel during the remainder of the 60-day appeal period. *Id.* at 474. Although he wrote "bring appeal papers" in Flores-Ortega's file, defense counsel did not recall a conversation with Flores-Ortega about the appeal and did not file a notice of appeal. *Id.* at 474–75. After several challenges to his sentence, Flores-Ortega filed a habeas petition alleging constitutionally ineffective assistance of counsel based on his counsel's failure to file a notice of appeal on his behalf after promising to do so. *Id.* at 474. In remanding the case for further review, the Court set forth the relevant framework for assessing each *Strickland* prong when a petitioner alleges that her counsel is ineffective for failure to file a notice of appeal.

With respect to the first prong—whether counsel's representation fell below an objective standard of reasonableness—the Court rejected a bright-line rule that counsel must always file a notice of appeal, and identified the proper application of the law in three scenarios. *Id.* at 477–81. Applying the law in the first two scenarios is relatively straightforward. If an attorney disregards "specific instructions" from a client to file a notice of appeal, the attorney acts in an objectively unreasonable manner. *Id.* at 477. And if a defendant instructs her counsel not to file an appeal, the defendant cannot later raise an ineffective assistance of counsel claim based on her attorney's failure to file a notice of appeal. *Id.* The third scenario—"when the defendant has not clearly conveyed [her] wishes one way or

another"—requires more analysis. *Id.* The court must first determine "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478. A consultation occurs when an attorney advises "the defendant about the advantages and disadvantages of taking an appeal and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If counsel consulted with the defendant regarding the appeal, counsel performs in an unreasonable manner "only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If counsel did not consult with the defendant, the court must determine whether the failure to consult constitutes deficient performance. *Id.* Counsel performs deficiently where (1) a "rational defendant would want to appeal," or (2) a "particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *Id.* at 480.

On the second prong—whether counsel's deficient performance prejudiced the defendant—the Court held that "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [s]he would have timely appealed." *Id.* at 484. In making this showing, a defendant cannot rely solely on evidence "that [s]he sufficiently demonstrated to counsel [her] interest in an appeal." *Id.* at 486. More is required. *Id.*

*2. <u>Garza</u>*

In *Garza v. Idaho*, 139 S. Ct. 738 (2019), the Supreme Court explored the scope of *Strickland*'s second prong and its *Flores-Ortega* holding that "when an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed with no further showing from the defendant of the merits of his underlying claims." *Id.* at 742 (internal citations and quotations omitted). Specifically, the Court examined whether the rule outlined in *Flores-Ortega* applies when "the defendant has, in the course of pleading guilty, signed what is often called an 'appeal waiver'—that is, an agreement forgoing certain, but not all, possible appellate claims." *Id.* In *Garza,* the defendant signed two plea agreements containing clauses waiving his right to

appeal. *Id.* After his sentencing, Garza told his attorney that he wanted to appeal. *Id.* at 743. He then called his attorney multiple times and sent him letters reminding him of his desire to appeal. *Id.* Garza's attorney received the requests to file a notice of appeal, but he did not do so because he believed that, per the plea agreements, Garza had waived his right to appeal. *Id.* After the deadline to file an appeal passed, Garza moved for post-conviction relief on the basis that his counsel "rendered ineffective assistance by failing to file notices of appeal despite [his] requests." *Id.*

In examining the first *Strickland* prong, the Supreme Court noted that filing a notice of an appeal is a "simple, nonsubstantive act" that is not necessarily a frivolous quest in the appeal waiver context because some claims may not have been waived, or a prosecutor may waive the waiver. *Id.* at 744–46. The Court then held that counsel's choice to override Garza's express requests for an appeal constituted a deficient performance. *Id.* at 746. In so holding, it rejected the argument that the risk of breaching the plea agreement rendered counsel's decision a "strategic one" because of the "possibility that the defendant will end up raising claims beyond the waiver's scope." *Id.* The Court declined to outline "any responsibility counsel may have to discuss the potential consequences of such a breach." *Id.* Further, it left "undisturbed . . . *Flores-Ortega*'s separate discussion of how to approach situations in which a defendant's wishes are less clear." *Id.* at 746 n.9.

With respect to the second *Strickland* prong, the Court reaffirmed the *Flores-Ortega* holding and held that the rule applied "regardless of whether the defendant has signed an appeal waiver." *Id.* at 747. The Court reasoned that despite "poor prospects" of success, "when deficient counsel causes the loss of an entire proceeding," there is a presumption of prejudice. *Id.* And, although Flores-Ortega did not sign an appeal waiver, the scope of his potentially appealable issues was limited because of his guilty plea. *Id.*

## B. Timeline of Events in the Instant Action

1. April 22, 2016 Plea Hearing

In her plea agreement letter, Bush-Bronson agreed to plead guilty to one count of wire fraud, in violation of 18 U.S.C § 1343. (Plea Agreement Letter at 1.) In exchange for her plea, the Government agreed not to further prosecute her for the conduct set forth in the Statement of Offense and not to charge her with any non-violent criminal offense in violation of Federal or District of Columbia law that was committed within the District of Columbia by Bush-Bronson prior to April 22, 2016 and about which the Government was made aware. (*Id.* at 2.) The Government also agreed to cap its allocution for incarceration at the low end of the applicable Sentencing Guidelines range. (*Id.* at 4.) Under the agreement, Bush-Bronson faced a statutory maximum of 20 years of imprisonment and her guidelines range was estimated to be 30 to 37 months of imprisonment. (*Id.* at 1–4.) The plea agreement also included the following acknowledgments and waivers:

> Should the Court determine that a different guidelines range is applicable, your client will not be permitted to withdraw your client's guilty plea on that basis, and the Government and your client will still be bound by this Agreement. . . .
>
> The parties further agree that a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a), should such a sentence be subject to appellate review notwithstanding the appeal waiver provided below. . . .
>
> [Y]our client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that is outside the Guidelines range or if the Court does not follow the Government's sentencing recommendation. . . . Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement. . . .
>
> Your client agrees to waive the right to appeal the sentence in this case . . . except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court or your client claims that your client received ineffective assistance of counsel, in which case your client would have the right to appeal the illegal sentence or above-guidelines sentence or raise on appeal a claim of ineffective assistance of counsel, but not to raise on appeal other issues regarding the sentencing. In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the

> Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement. . . .
>
> Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack . . . except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective assistance of counsel. . . .
>
> Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement . . . your client will have breached this Agreement.

(*Id.* at 4–10 (emphasis added).) Bush-Bronson signed this agreement and affirmed that she had "read every page of this Agreement" and discussed it with Amato. (*Id.* at 12.)

At the hearing on Bush-Bronson's motion to vacate, Amato testified that before the plea hearing, she sat down with Bush-Bronson and read the entire plea agreement letter "word for word," and answered Bush-Bronson's questions about the agreement. (Mhrg. Tr. at 47:5–21.) Amato told Bush-Bronson that she hoped the court would not sentence her to prison time, but that she could not make any promises. (*Id.* at 64:2–5; 51:20–24.) Bush-Bronson testified that she told Amato that she was comfortable with a sentence of 12 to 18 months of imprisonment (*id.* at 12:12–15, 27:1–4,) however she understood that the sentence would be up to the court (*id.* at 18:17–19, 35:4–10.) Amato testified that Bush-Bronson appeared to understand the terms of agreement and "was a very bright woman . . . very involved in her case[, and] very engaged." (*Id.* at 49:17–22.) Bush-Bronson asked her questions constantly and the two "spent hours together going through things." (*Id.* at 49:22–24.)

At the April 22, 2016 plea hearing, the court found that Bush-Bronson was fully competent and capable of entering an informed plea. (*See* ECF No. 50 ("Plea Hrg. Tr.") at 4:25–8:1.) The court then asked Bush-Bronson several questions to ensure that she was aware of and understood the rights that she was giving up by pleading guilty. (*Id.* at 8:2–12:23.) After the court advised her of her waiver of

appellate rights and Bush-Bronson confirmed that she understood, the court stated, "What I just said is a little complicated. Did you talk about that with your lawyer?" (*Id.* at 10:22–11:23.) Bush-Bronson responded, "[y]es, we did."[3] (*Id.* at 11:24.) The court then discussed the charges lodged against Bush-Bronson, reviewed the plea agreement, accepted the agreement, and informed Bush-Bronson of the potential sentence she could receive as well as the factors the court would consider at sentencing. (*Id.* at 12:24–30:8.) Finally, the court found that Bush-Bronson's plea of guilty was knowing and voluntary and adjudged her guilty of wire fraud. (*Id.* at 30:9–32:16.)

2. January 18, 2017 Sentencing Hearing

On January 18, 2017, Bush-Bronson appeared before the court for a sentencing hearing. After resolving objections and prior to considering any departures or variances, the court found that with an offense level of 18 and a criminal history category of III, Bush-Bronson's applicable guidelines range was 33 to 41 months of imprisonment. (ECF No. 40 ("Sent. Tr.") at 16:9–13.) The court denied Bush-Bronson's motion for a 9-level downward departure based on her family obligations, and instead considered those obligations under the 18 U.S.C. § 3553 factors. (*Id.* at 16:14–18:22.) The court then heard from FBI Agent Helena Moore (the lead agent on the investigation), Marissa Lorenzetti (Director of Operations for Bush-Bronson's former employer), counsel for the Government, Marcus Mason (Senior Partner and Co-owner of Bush-Bronson's former employer), and defense counsel.[4] (*Id.* at 22:4–92:4, 95:3–125:21.)

[3] At the motions hearing, Bush-Bronson testified that she was not being truthful at the plea hearing when she told the court that she had reviewed and understood the agreement. (*See* Mhrg. Tr. at 25:7–8.) The court did not find Bush-Bronson's testimony credible; she contradicted the statements she made at her plea hearing and stated that she had lied under oath during that proceeding. Moreover, her self-serving statement was contradicted by the record and by Amato, whose testimony the court found credible.

[4] Bush-Bronson was afforded the opportunity to speak on her own behalf and exercised her right not to do so. (Sent. Tr. at 125:22–24.)

After considering all submissions to the court, the guidelines, counsel's allocution, Mason's statements, and the testimony of Lorenzetti and Agent Moore, as well as the factors in 18 U.S.C. § 3553, the court sentenced Bush-Bronson to 36 months of imprisonment,[5] well below the 20-year statutory maximum and within the 33 to 41 months recommended guidelines range for her offense. She was also given 60 days to get her affairs in order and self-surrender.[6]

3. January 19–23, 2017 Emails

The day after her sentencing hearing, Bush-Bronson emailed Amato with several questions, including whether she could "ask for a sentence modification." (Def.'s Ex. 1 at 5–6.) As is evident from the email and Bush-Bronson's testimony, she was concerned with the length of her prison sentence and wished to delay her self-surrender date. (*Id.*; Mhrg. Tr. at 32:5–21.)

That same day, Amato responded, informing Bush-Bronson that "the only way to redress a sentence is to appeal," and that per Bush-Bronson's plea agreement, she was not permitted to appeal her sentence unless she was sentenced outside of the guidelines range. (Def.'s Ex. 1 at 4.) Amato also noted that because Bush-Bronson was sentenced within the guidelines range, she "would be in breach of the agreement if [she] were to appeal." (*Id.*) With respect to the self-surrender date, she advised Bush-Bronson that any request to the court for a modification should be supported with documentation showing that she had taken the necessary steps to get her affairs in order and include a proposed self-surrender date. (*Id.*)

[5] Bush-Bronson was further sentenced to serve 36 months of supervised release, pay a $100 special assessment, and pay $373,151.79 in restitution. (Sent. Tr. at 134:19–23; ECF No. 29, Restitution Order.) The court waived imposition of a fine. (Sent. Tr. at 134:23–24.)

[6] The court subsequently granted Bush-Bronson's request to self-surrender in 90 days. (*See* ECF No. 31.)

Less than an hour later, Bush-Bronson asked Amato for information on the consequences of breaching her plea agreement. (*Id.* at 3.) She wanted to explore "exhaust[ing] all options" before finding a placement for her autistic son, who was almost 18 years old at the time. (*Id.* at 3–4.) She also stated that because she did not think that she would be facing any jail time, she had not taken any steps to get her affairs in order prior to sentencing. (*Id.* at 4.)

Within 30 minutes, Amato responded that in the event of a breach, the government could "go after" Bush-Bronson and seek more jail time than it had agreed to in the agreement. (*Id.* at 3.) She also noted the remote possibility that the government could take her to trial. (*Id.*) Amato further stated, "[a] breach is not in your favor either way and the Judge would not look favorably on it either." (*Id.*) Amato also advised Bush-Bronson, with respect to the self-surrender date, "to have a plan A and plan B" in the event the court does not grant the modification request. (*Id.*)

On January 22, 2017, Bush-Bronson responded: "My [sic] want to file an appeal. I have thought about this over the weekend and I understand by doing so it will be a breach of the plea agreement." (*Id.* at 2.) She reiterated that she was shocked by the length of her sentence and had she known, she would have gotten her family ready. (*Id.*) She stated that there was "no way to get [her] affairs in order within 60 days. . . . So the appeal process [wa]s [her] plan b." (*Id.*) Bush-Bronson said that she understood if Amato wanted to remove herself from the case, but the appeal was the "best thing" she could do to "have time to get [her] child, [her] mom, and [her]self in a place to where [she] will be gone for 4 years." (*Id.*) She then asked for information to have the appeal filed and the court reporter's information. (*Id.* at 3.)

The following morning, Amato responded: "We need to talk further about your reasons for appealing and what it would mean to breach the plea agreement." (*Id.* at 1.) She then clarified that if Bush-Bronson were to appeal, it would not affect her obligation to turn herself in and begin her

sentence. (*Id.*) Amato further conveyed that while Bush-Bronson could petition the Court of Appeals to reconsider her release pending appeal, such petitions are granted in instances where there is a likelihood of reversal of conviction as opposed to situations in which a petitioner seeks relief for personal reasons. (*Id.*) She then reiterated her willingness to make a supported request to the court to delay self-surrender and advised Bush-Bronson to take steps to get her affairs in order. (*Id.*)

4. January 24, 2017 Call

Amato testified that on the morning of January 24, 2017, Bush-Bronson called her and the two discussed the appeal and other issues. (Mhrg. Tr. at 55:11–17.) In addition to reviewing the plea agreement and waiver language, Amato and Bush-Bronson "went through why she wanted to appeal" and the risks associated with an appeal. (*Id.* at 56:1–4, 67:7–8, 67:19–25.) Specifically, Amato discussed her concern that, based on a case outside of this Circuit, an expressly waived appeal may constitute a breach of the plea agreement and place a client in a worse position. (*Id.* at 55:21–25, 64:16–25.) The conversation lasted for more than half an hour. (*Id.* at 68:25.) Amato and Bush-Bronson both testified that at the end of the call, Bush-Bronson finally decided that she did not want to file a notice of appeal.[7] (*Id.* at 34:8–14, 56:1–4, 59:22–25.) Amato then made it clear to Bush-Bronson that she would not be filing a notice of appeal and noted Bush-Bronson's decision in her billing records. (*Id.* at 56:5–12, 58:8–22.) Bush-Bronson testified that after this conversation, she never communicated to Amato that she had changed her mind and wanted to appeal. (*Id.* at 34:18–22.)

[7] At one point in her testimony, Bush-Bronson said that Amato "persuaded" her over the phone not to file an appeal. (Mhrg. Tr. at 34:5–7.) However, Bush-Bronson did not proffer any examples of coercion or improper persuasion. For this reason and the other problems with Bush-Bronson's testimony, the court does not find her characterization of the conversation credible.

5. January 24–25, 2017 Emails

Later that evening, on January 24, 2017, Bush-Bronson emailed Amato with seven questions regarding the conditions of her upcoming confinement. (Govt.'s Ex. 5 at 1–2.) The questions ranged from documentation needed to participate in the Bureau of Prisons' Residential Drug Abuse Program to whether she could have a dental guard in prison, to an estimate of her release date. (*Id.*) She did not mention the appeal.

The following day, Amato responded to Bush-Bronson's questions and concerns. (*Id.* at 1.) The appeal was not mentioned.

**C. *Strickland* Analysis**

In applying *Strickland* to the facts of this case, the government argues that Bush-Bronson has failed to meet the first prong because she "expressly decided not to appeal," and Amato's action—not filing a notice of appeal—was in accord with Bush-Bronson's "express instructions." (ECF No. 62 ("Govt.'s Resp. to Def.'s Supp. Br.") at 5–10.) In addition, the government contends that "because the only issue defendant sought to raise on appeal was the length of her sentence, Amato reasonably counseled defendant that she would be in breach of her plea agreement if she appealed" on that basis. (*Id.* at 5.) Mindful that "courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential," the court agrees with the government. *Flores-Ortega*, 528 U.S. at 477 (internal citations and quotations omitted).

At the outset, the facts here differ from *Flores-Ortega*. In *Flores-Ortega*, after sentencing, the defendant spoke with counsel about an appeal and then was taken immediately into custody and subjected to a 90-day evaluation, during which he was unable to speak with his attorney. *Id.* at 474–75. Here, however, Bush-Bronson was allowed to remain on release pending self-surrender, and during that

time, Amato had unfettered access to her client, which made communication relatively easy. *See Garza*, 139 S. Ct. at 745 (noting that when a defendant is in custody, communication with counsel regarding an appeal is "difficult").

Indeed, because of this access, Bush-Bronson was able to email Amato the day after sentencing with several questions, including whether she could "ask for a sentence modification" because she "did not think that [she] would be sentenced to such a long time" and therefore had not made arrangements for her son. (Def.'s Ex. 1 at 5–6.) Amato responded within hours, telling Bush-Bronson that while Amato could not request a sentence modification, she could pursue an appeal, but in doing so, she would be in breach of her agreement because Bush-Bronson had received a sentence within her guideline range. (*Id.* at 4.) Amato also advised Bush-Bronson how she could most effectively seek an extension of her self-surrender date. (*Id.*)

Within an hour, Bush-Bronson asked for more information about breaching her agreement and filing an appeal challenging the length of her sentence. (*See id.* at 3 ("If I breach the agreement what is the outcome?").) Although "the better practice is for counsel routinely to consult," that is advise the client about the advantages and disadvantages of an appeal and subsequently make a reasonable effort to discover the client's wishes, *Flores-Ortega*, 528 U.S. at 478, and the Circuit has "exhort[ed] all defense counsel in this circuit to follow that practice," s*ee United States v. Taylor*, 339 F.3d 973, 982 (D.C. Cir. 2003), an attorney is not required to consult with her client regarding an appeal in every case, *see Flores-Ortega*, 528 U.S. at 480 ("We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal."). However, by this point in the conversation, if not sooner, Amato had a constitutional duty to counsel her client because Bush-Bronson had demonstrated an interest in appealing. *See Flores-Ortega*, 528 U.S. at 480 (holding "that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that this

particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing"). And Amato did in fact counsel Bush-Bronson, via email and over the phone, about the advantages and disadvantages of appealing the length of her sentence. In so doing, Amato was able to make sure that Bush-Bronson did not view an appeal as an avenue to get an extension of her self-surrender date.[8] Amato also reasonably advised Bush-Bronson that, based on precedent from other Circuits, there could be adverse consequences to appealing her sentence.[9] Indeed, had Amato not informed Bush-Bronson of the potential consequences before challenging the length of the sentence, she may well have been found to be ineffective—especially if Bush-Bronson was blindsided by any of the potential consequences outlined in the plea agreement. (*See* Plea Agreement Letter at 10.)

Perhaps the most important difference between this case and *Garza* is that once Amato fulfilled her constitutional duty to consult with Bush-Bronson about the consequences of an appeal, Bush-Bronson's final decision was not to appeal. "If counsel has consulted with the defendant, . . . Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478. "[A] defendant who explicitly

---

[8] In the January 22, 2017 email, after Amato told Bush-Bronson to come up with a plan b in the event that the court did not grant her more than 60 days to self-surrender, Bush-Bronson stated: "M[a]y want to file an appeal. . . . There is no way to get my affairs in order within 60 days. . . . So this appeal process is my plan b." (Def.'s Ex. 1 at 2.)

[9] At the time, although the issue had not arisen in the D.C. Circuit, the Seventh Circuit had held: "when a defendant appeals despite agreeing not to do so, the prosecutor may withdraw concessions made as part of the bargain. The prosecutor made substantial concessions to Nunez. An appeal would have put them in jeopardy, allowing the prosecutor to reinstate the two dismissed charges or ask the district court to increase the sentence on the existing conviction. If it did nothing else, an appeal would have demonstrated that Nunez had not accepted responsibility and would have entitled the judge to rescind the discount under U.S.S.G. § 3E1.1. A defendant has more reason to protest if a lawyer files an appeal that jeopardizes the benefit of the bargain than to protest if the lawyer does nothing-for 'nothing' is at least harmless." *Nunez v. United States*, 546 F.3d 450, 455 (7th Cir. 2008), *abrogated by Garza*, 139 S. Ct. 738. An Eighth Circuit concurrence agreed with and reiterated the *Nunez* finding. *See Witthar v. United States*, 793 F.3d 920, 924–25 (8th Cir. 2015) (J. Gruender concurring).

tells [her] attorney *not* to file an appeal plainly cannot later complain that, by following [her] express instructions, [her] counsel performed deficiently." *Flores-Ortega*, 528 U.S. at 477 (emphasis in original). Thus, once Bush-Bronson told Amato that she did not want to appeal, Amato was under no obligation to file a notice of appeal. *See Smith v. United States*, 522 F. Supp. 2d 233, 238 (D.D.C. 2007) (finding that where petitioner "ultimately decided he did not want to note an appeal," counsel was not ineffective for not filing an appeal). Amato had no duty to further consult with Bush-Bronson about the appeal because, as the subsequent emails and Bush-Bronson's testimony make clear, at no point following Bush-Bronson's decision did she indicate that she had changed her mind (and she remained on release for approximately 83 more days before self-surrendering). *See United States v. Wei Chin*, 519 F. App'x 690, 691 (D.C. Cir. 2013) (affirming district court's determination that counsel was not required to further consult with defendant regarding an appeal after he had clearly stated that he did not wish to appeal and "did nothing to countermand these instructions").

* * *

In sum, the court finds that Bush-Bronson has not shown that Amato's failure to file a notice of appeal constitutes an ineffective assistance of counsel.[10]

[10] Because the court finds that Bush-Bronson cannot satisfy the first prong of the *Strickland* test, it need not consider the second-prong issue of whether Bush-Bronson was prejudiced. *See Taylor*, 339 F.3d at 977.

## IV. CONCLUSION

For the reasons set forth above, Bush-Bronson's motion to vacate will be DENIED.[11]

A corresponding order will issue separately.

Date: July 3, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

[11] On May 10, 2018, Bush-Bronson filed a Motion for Judicial Recommendation Regarding 9-12 of RRC Placement. (ECF No. 42.) In the motion, she requested that the court recommend to the Bureau of Prisons ("BOP") that she receive nine to twelve months of Residential Re-Entry Center ("RRC") or "halfway house" placement. Given that the court's initial sentence was within the guidelines range and Bush-Bronson has not raised any claims that justify altering her 36-month prison term, the court finds no reason to alter her sentence or recommend to the BOP that a certain portion of her sentence be served in an RRC rather than a prison. The BOP is tasked with determining where to place Bush-Bronson for the duration of her sentence, *see* 18 U.S.C. § 3621(b), and the court believes that the BOP is in the best position to determine whether and when to place Bush-Bronson in an RRC, considering the circumstances of this case. Thus, the court will also DENY Bush-Bronson's Motion for Judicial Recommendation.